UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| HAIKHAM SYHARATH,<br><br>Petitioner,<br>v.<br><br>BRUCE SCOTT et al.,<br><br>Respondents. | CASE NO. 2:26-cv-03109-DGE<br><br>ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) |

Before the Court is Petitioner Haikham Syharath's petition for writ of habeas corpus. (Dkt. No. 1.) For the reasons discussed below, the Court GRANTS the petition.

## I. BACKGROUND

### A. Factual Background

Petitioner, a native and citizen of Laos, entered the United States in 1991 and was admitted as a refugee. (Dkt. Nos. 1 at 3; 8 at 2.) In 1992, Petitioner adjusted her status and became a lawful permanent resident. (Dkt. No. 8 at 2.) In 1997, Petitioner was convicted of Conspiracy to Manufacture, Distribute, and Possess with Intent to Distribute Marijuana, a

violation of 21 U.S.C. 846 and 21 U.S.C. § 841(a)(1), in the United States District Court for the Eastern District of California. (Dkt. Nos. 8 at 2; 9-1 at 3.) The same year, Petitioner was placed in removal proceedings based on this conviction. (Dkt. Nos. 8 at 2; 9-2.) In 1998, an Immigration Judge ("IJ") released Petitioner on bond. (Dkt. No. 8 at 2–3.) In May 2000, Petitioner was ordered removed in absentia to Laos after she failed to appear for her removal proceeding. (Dkt. Nos. 8 at 3; 9-3.) In June 2000, the Immigration and Naturalization Service issued a Warrant for the Removal/Deportation of Petitioner, but was unable to locate her. (Dkt. No. 8 at 3.) In 2008, Enforcement and Removal Operations ("ERO") located Petitioner and released her on an order of supervision after determining there was not a significant likelihood of removal to Laos. (Dkt. Nos. 8 at 3; 9-4.)

On July 2, 2026, Laos issued a travel document for Petitioner that was valid for 90 days. (Dkt. No. 9-5.) On August 3, 2026, ICE detained Petitioner during a routine check-in and revoked her order of supervision. (Dkt. Nos. 8 at 3; 9-1 at 3–4; 9-6.) Petitioner was afforded an "informal interview" to respond to the reasons for the revocation of her order of supervision. (Dkt. No. 8 at 4; 9-1 at 4.) Petitioner was then transferred to the Northwest ICE Processing Center in Tacoma, where she remains. (Dkt. No. 8 at 4.) ERO notified Petitioner that she would be removed to Laos on September 8, 2026. (*Id.*)

**B. Procedural History**

On September 1, 2026, Petitioner filed a petition for writ of habeas corpus in this Court. (Dkt. No. 1.) Petitioner argues that Respondents detained her without constitutionally adequate due process. (*Id.* at 5–12.) Petitioner seeks immediately release. (*Id.* at 12–15.) The same day, Petitioner filed a motion for a temporary restraining order ("TRO") barring Respondents from removing her from the United States pending resolution of her habeas petition. (*See* Dkt. No. 2.)

The Court provisionally granted the TRO. (Dkt. No. 5.) On September 3, 2026, Respondents filed a Notice of Intent to Remove Petitioner to Laos. (Dkt. No. 10.) On September 4, 2026, the Court held a hearing on Petitioner's motion for a TRO, denied the motion, and vacated its prior order provisionally granting the TRO. (Dkt. Nos. 11, 12.) On September 7, 2026, Petitioner filed an emergency motion for relief, asking the Court to prohibit Respondents from removing her from the United States until "she has a meaningful opportunity after the San Francisco Immigration Court opens at 8:00 a.m. on September 8, 2026 to present her Motion to Reopen and Rescind In Absentia Order of Removal[.]" (Dkt. No. 13.) The Court denied the motion, but directed Respondents' to respond to Petitioner's motion no later than 5:00 PM on September 8, 2026. (Dkt. No. 16.) The Court also noted that 8 U.S.C. § 1229a(b)(5)(C)(ii) would impose an automatic stay of removal once Petitioner filed her motion to reopen. (*Id.*) Petitioner filed her motion to reopen her removal proceedings, and an automatic stay of those proceedings is now in effect. (Dkt. No. 19.)

## II. ANALYSIS

### A. Legal Standard

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). To succeed on his habeas petition, Petitioner "must show [he] is in custody in violation of the Constitution or laws or treaties of the United States." *Doe v. Bostock*, No. C24-0326-JLR-SKV, 2024 WL 3291033, at *5 (W.D. Wash. Mar. 29, 2024), *report and recommendation adopted*, No. C24-0326JLR-SKV, 2024 WL 2861675 (W.D. Wash. June 6, 2024) (citing 28 U.S.C. § 2241). Because habeas proceedings are civil in nature, the "[p]etitioner 'bears the burden of proving that he is being held contrary to law, . . . [and] he must satisfy his burden of proof by a preponderance

of the evidence.'" *Aditya W. H. v. Trump*, No. 25-cv-1976, 2025 WL 1420131, at *7 (D. Minn. May 14, 2025) (quoting *Freeman v. Pullen*, 658 F. Supp. 3d 53, 58 (D. Conn. 2023) (citations omitted)).

**B. Petitioner's August Detention Did Not Violate Due Process**

The Due Process Clause protects against deprivation of liberty without proper process, and this protection extends to deportation proceedings. U.S. Const. amend. V. ("No person shall be . . . deprived of life, liberty, or property, without due process of law[.]"); *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) ("'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)).

The traditional test for evaluating due process claims set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), "can and must account for the heightened governmental interest in the immigration detention context." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). *Mathews* employs a three-factor test looking at (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest." *Mathews*, 424 U.S. at 335. The first *Mathews* factor considers "the private interest that will be affected by the official action." *Id.* Courts have continually recognized an immigration detainee's private interest in freedom from imprisonment. *See Hamdi*, 542 U.S. at 529 (finding freedom from detention "the most elemental" of private interests); *Zadvydas v. Davis,* 533 U.S. 678, 690

(2001) ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects.")

At the time of her detention in August 2026, Petitioner maintained a significant private interest in her liberty given how long she lived in the community under an order of supervision, but that private interest was offset somewhat by the valid order of removal that had been in place since 2000. Moreover, the risk of erroneous deprivation was limited because Petitioner was subject to a final order of removal and Respondents had secured a valid travel document prior to her detention. At that time, no additional process would have impeded Respondents' ability to detain Petitioner and effect removal. And Respondents' interest in detaining Petitioner was significant because of the final order of removal and the removal flight scheduled for September 8, 2026.

Weighing the *Mathews* factors, the Court concludes Petitioner's August detention did not violate due process.

**C. Petitioner's Ongoing Detention Does Violate Due Process; There Is No Likelihood of Removal in the Reasonably Foreseeable Future**

Since Petitioner's August 2026 detention, circumstances have changed in two ways that impact the Court's analysis under *Mathews*. Petitioner's travel document, which was valid for 90 days, has expired, and there is no indication that Respondents have secured a new, valid travel document. Moreover, enforcement of Petitioner's removal order is presently stayed. Given these new facts, the Court finds that Petitioner's ongoing detention does constitute a due process violation.

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law." U.S. CONST. amend. V. "The Fifth Amendment guarantees due process in deportation proceedings."

*Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001). Thus, the Supreme Court has held "the Due Process Clause protects a[ ] [noncitizen] subject to a final order of deportation[.]" *Zadvydas*, 533 U.S. at 693–694 (citing *Wong Wing v. United States*, 163 U.S. 228, 238, (1896)). *Zadvydas* "places the burden on the [noncitizen] to show, after a detention period of six months, that there is 'good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.'" *Pelich v. I.N.S.*, 329 F.3d 1057, 1059 (quoting *Zadvydas*, 533 U.S. at 701). If the noncitizen meets this burden, then the respondents must "introduce evidence to refute that assertion." *Id.* (first citing *Zadvydas*, 533 U.S. at 701; and then citing *Xi v. I.N.S.*, 298 F.3d 832, 839–840 (9th Cir. 2002)); *see also Nadarajah v. Gonzales*, 443 F.3d 1069, 1082 (9th Cir. 2006) ("Given the unreasonable length of [petitioner's] detention, the unforeseeability of his removal, and the failure of the government to rebut his showing that there is no significant likelihood of removal in the reasonably foreseeable future, the government's continued detention violates federal law, as construed by the Supreme Court.").

Petitioner argues that "[w]ith removal stayed and the current travel document expiring September 30, Respondents cannot show that Petitioner's removal is reasonably foreseeable." (Dkt. No. 23 at 6.) Respondents, however, "believe[] that there is a significant likelihood of removal in the reasonably foreseeable future[.]" (Dkt. No. 22 at 2.) But Respondents no longer have a valid travel document that will permit them to remove Petitioner to Laos in the foreseeable future. Nor have Respondents provided any information about how, when or if they will secure a new travel document, and there is no evidence that Respondents will obtain any such document in the near future as it appears Respondents likely will wait to take further action to secure a travel document until after Petitioner's motion to reopen her removal proceedings is decided. While Petitioner has not yet been detained for six months, the Court finds Respondents

have failed to rebut Petitioner's showing that there is no likelihood of removal in the reasonably foreseeable future, given the lack of a valid travel document.[1]

Because there is not a significant likelihood of removal in the reasonably foreseeable future, Petitioner's detention is no longer permitted under *Zadvydas*. *See* 533 U.S. at 699–700 ("[I]f removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute."). Petitioner's detention is unlawful, and release is the appropriate remedy. *See Yuksek v. Bondi*, Case No. 2:25-CV-02555-DGE-GJL, 2026 WL 60364 (W.D. Wash. Jan. 8, 2026) (allowing release upon a finding that removal was not reasonably foreseeable); *Douangdala v. Bondi*, Case No. 2:26-cv-00963-DGE, 2026 WL 1113383 (W.D. Wash. Apr. 24, 2026) (same).

## III. ORDER

The Court GRANTS Petitioner's petition for writ of habeas corpus. (Dkt. No. 1.) The Court ORDERS:

1. Respondents and all their officers, agents, attorneys, and persons acting on their behalf or in concert with them SHALL release Petitioner from custody within **ONE (1) DAY** of this Order.
2. Petitioner SHALL NOT be re-detained, absent urgent circumstances or a clear legal basis for detention, without first providing pre-deprivation notice and an opportunity to be heard in front of an immigration judge.

[1] The statutory stay of Petitioner's removal proceedings may not provide a basis to conclude that Petitioner's removal is not reasonably foreseeable. *See Prieto-Romero v. Clark*, 534 F.3d 1053 (9th Cir. 2008). However, any uncertainty concerning when Petitioner's motion to re-open her removal proceeding will be ruled upon must be weighed against the lack of evidence that Petitioner cannot be removed once the stay is lifted. Here, there is no evidence of a valid travel document that would allow Petitioner's removal even if the stay is lifted.

3. Respondents shall return to Petitioner any personal property, including personal identification documents (other than a passport) and employment authorization documents (EADs).

4. Within **<u>TWENTY-FOUR (24) HOURS</u>** of this Order, Respondents SHALL provide the Court with a declaration confirming Petitioner has been released from custody and SHALL file a copy of the conditions of supervision.

Dated this 2nd day of October, 2026.

David G. Estudillo
United States District Judge